**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**LOUISVILLE DIVISION**

**CASE NO. 3:07cv128**

**ROSEMARY MCBRIARTY**                                                    **PLAINTIFF**

**V.**

**THE HARTFORD**                                                         **DEFENDANT**

**MEMORANDUM OPINION AND ORDER**

The Plaintiff, Rosemary McBriarty, filed this ERISA action against Defendant
Hartford Life and Accident Insurance Company ("Hartford"), the plan administrator for
Norton Healthcare in Louisville, Kentucky.  Hartford terminated the long-term disability
benefits that McBriarty had been receiving as a former Norton Healthcare employee, on the
ground that her condition had improved and she was no longer "totally disabled."  The Court
concludes that Hartford's denial of McBriarty's claim did not result from a full deliberative
process.

**I.  Factual Background**

The Plaintiff, McBriarty, worked for Norton Healthcare ("Norton") from 1995 to
March 13, 2002.  She worked as a full time registered nurse.  Norton's job description for
McBriarty's position states that the position entails constant walking, frequent lifting,
carrying, pulling, balancing, occasional pushing, elevated work, and working with patients
of unlimited weight with assistance. [AR 109].

In September, 2001 while working at Norton, McBriarty slipped on a concrete floor and injured her back. [AR 492]. After she fell, McBriarty was off work until January 2002 when an evaluation indicated she was capable of returning to work. She attempted to return to work, however, in March, 2002, her treating physician at that time, Dr. Weston, completed an attending physician statement that restricted McBriarty from performing her work as a registered nurse. [AR 833]. She has not worked since.

McBriarty submitted a long-term disability claim under Norton's disability plan in September, 2002, indicating that she had fibromyalgia and irritable bowel syndrome. [AR 833]. Id. The Norton disability plan covers two distinct stages of "total disability." The first provides that a person is disabled when "prevented by: (1) accidental bodily injury; (2) sickness; (3) Mental Illness; (4) Substance Abuse; or (5) pregnancy, from performing one or more of the Essential Duties of [Her] Occupation," resulting in earnings no more than 80% of the pre-disability earnings. [AR 30]. The second category applies after the first 24 months of benefits, and requires that the participant be unable to perform "one or more of the essential duties of any occupation." [AR 30]. Hartford approved disability benefits based on Dr. Weston's statement. [AR 492]. McBriarty began receiving disability benefits first because she was considered disabled from performing her own occupation and later because she was considered disabled from performing any occupation.

McBriarty's plan makes clear that it is her burden to continue to demonstrate her ongoing disability. Thus, over the course of the next several years, a Hartford representative would regularly contact McBriarty, checking in on her status and improvement. McBriarty

2

treated with several doctors in an attempt to alleviate her pain.  She was prescribed numerous medications. She visited a chiropractor, underwent acupuncture, had epidural blocks, steroid injections, traction, hydrotherapy and psychotherapy.  Her use of  narcotics became problematic but she was ultimately able to limit her medications.  She tried massage therapy and even turned to holistic medicine.

Dr. Gleis conducted an independent medical examination of McBriarty in 2003 and again in 2005.  Both times he was of the opinion that McBriarty could sedentary work consistent with her nursing degree. [AR 429].  Despite the opinion of Dr. Gleis, the Hartford continued to find her long-term disability benefits based on all the other medical evidence in the record..

Later,  McBriarty filed for Social Security disability benefits at the direction of plan administrators. [AR 186].  The Social Security Administration initially denied McBriarty's claim, but in August, 2004, she received a favorable ruling.  The administrative law judge decided that McBriarty was totally disabled as of March 13, 2002, and was entitled to receive benefits retroactive to September, 2002.  As a result, the Hartford was entitled to an offset and demanded reimbursement for its overpayment of benefits.  A payment plan was arranged to collect the overpayment from her. [AR 609].

The record reflects that on December 1, 2005, McBriarty indicated to the claims administrator that she was considering a return to work in 2006. [AR 153].  Thereafter, Hartford elected to perform surveillance of McBriarty's home to determine whether her activities of daily living were aligned with her stated restrictions.  On December 11 and 12,

3

2005, her home was surveilled. [AR 876].  While it was believed that McBriarty was home, she was not observed outside her home. Id.  On January 20 and 21, 2006, McBriarty's home was again surveilled.  Hartford's private investigator twice observed McBriarty walking her dog, on the first day for 25 minutes, and the second day for 22 minutes.  Id.

In April, 2006, a Hartford representative interviewed McBriarty. [AR 865].  During the interview, McBriarty confirmed that she was the person in the surveillance video. [AR 866].  She stated that she can walk for 20 minutes, but some days is limited to five. [AR 860].  McBriarty stated that she can bend and twist but cannot do so repetitively and avoids doing so. [AR 860].  The interviewer observed that McBriarty was uncomfortable during the three hour interview. [AR 897].

On June 29, 2006, a letter was mailed to McBriarty's attending physicians, Dr. Chou and Dr. Mehta.  It included the surveillance video, the interview and definitions of the definition of sedentary work.  The letter summarized the contents of the video and provided examples of discrepancies between McBriarty's reported abilities and other findings.  For instance, the letter mentions Dr. Gleis' findings that she is able to work and the fact that the she has not required any prescription analgesic medication since January 2005.  The doctors were then asked to  agree or not with the Hartford's findings that McBriarty was able to do sedentary work.  Dr. Mehta deferred to Dr. Chou.  Dr. Chou agreed with the Hartford's findings.

On August 1, 2006, Hartford notified McBriarty that her disability benefits would be terminated as of July 31, 2006, concluding that McBriarty was "not prevented from

4

performing the Essential Duties of any Occupation." [AR 209]. The letter stated that the decision was based on various medical records, an independent medical exam, surveillance of McBriarty, correspondence from Drs. Chou and Mehta, and an employability analysis report.

McBriarty appealed the denial of disability benefits. During the pendency of the appeal, McBriarty's counsel deposed Dr. Chou. Dr. Chou indicated that while McBriarty had a history of neuropathy, carpal tunnel, osetoarthritis, fibromyalgia, and panic attacks, he had treated her mostly for the management of pain and to help improve her function. [AR 241]. Dr. Chou reported that he found McBriarty credible and that there were clinical reasons for her pain. He reported that McBriarty could lift no "greater than ten pounds, no repetitive bending or twisting at the waist, no prolonged standing or walking more than 45 minutes at a time, no prolonged sitting more than 90 minutes." [AR 243-44]. Dr. Chou stated that McBriarty would likely require a ten-minute break per hour, and that she would need the freedom to sit briefly during her periods of standing and walking, and likewise needed freedom to stand briefly during her period of sitting. [AR 244-45]. Dr. Chou indicated that he thought that her level of pain would increase through a work week, and that "if she was lucky enough to get a job that fits under all of these issues, it wouldn't be unexpected that she may have to take time off of work probably an average of once or twice a month for a period of a couple of days to recover."  [AR 250]. Dr. Chou also noted that McBriarty had done well in getting off narcotic pain medications, because "she's going to have discomfort the rest of her life." [AR 249].

In response to McBriarty's appeal of the denial of her benefits, Hartford had a medical examiner, Dr. Marion, review her file. After reviewing the file and confirming with Dr. Chou's nurse that Dr. Chou was still of the opinion that his patient would do sedentary work, Dr. Marion concluded that McBriarty was no longer disabled and she could return to work. [AR 218]. Dr. Marion concluded that because the employability analysis indicated she could work and because her condition was stable, McBriarty could resume occupational activities.

In light of this report, Hartford issued a final denial of disability benefits on January 12, 2007. The notice of denial relied on much of the same information as the prior notice, however, it noted that Dr. Chou's position "remains somewhat vague and inconsistent." The denial stated that there was "insufficient evidence to support disability from Any Occupation." In addition, the denial noted that the question remained as to whether McBriarty "can sustain . . . activity in a manner consistent with full-time work." [DN 1, Exh. 1]. McBriarty's appeal was then complete and her claim was denied. Having exhausted her administrative remedies, McBriarty brought a civil action pursuant to Section 502(a) of the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. § 1132 (ERISA).

## II. Discussion

### A. Standard of Review

This matter is governed by ERISA. The United States Supreme Court has indicated that § 1132 of the statute, which outlines the causes of action available to claimants, was intended by Congress to be the "exclusive remedy" for rights guaranteed under ERISA. Ingersoll-Rand Co. v. McClendon, 498 U.S. 133, 144 (1990). This is particularly true in

situations where, as here, the claims revolve around the denial or recovery of benefits under an ERISA benefit plan.  Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41 (1987).  Hence, McBriarty's sole remedy in this case falls under the provisions of ERISA.[1]

Although ERISA expressly provides for a private cause of action to recover benefits alleged to be due under a benefit plan, the statute is silent as to what standard of review the Court is to apply in reaching a decision on the merits of such a claim.  In order to determine the appropriate standard of review, the Court must ascertain whether the plan has vested Defendant with discretion to determine eligibility for benefits.  A plan administrator's denial of benefits under an ERISA plan "is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." Firestone Tire and Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989); see also Wilkins v. Baptist Healthcare System, Inc., 150 F.3d 609, 613 (6th Cir. 1998).  On the other hand, if the plan vests discretionary authority in the plan administrator, the Court reviews the denial of benefits under an arbitrary and capricious standard of review, and bases its determination upon a review of the administrative record.  See Perez v. Aetna Life Ins. Co., 150 F.3d 550, 555 (6th Cir. 1998)(en banc); Wilkins, 150 F.3d at 613.

There are no "magic words" that determine when a plan has vested the administrator

---

[1] 29 U.S.C. § 1332 (a)(1)(B) provides:
A civil action may be brought–
(1) by a participant or beneficiary . . . (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan . . .

with discretion to construe the terms of the plan. <u>Perez</u>, 150 F.3d at 555. Nonetheless, the grant of discretion must be clear. <u>Wulf v. Quantum Chemical Corp.</u>, 26 F.3d 1368, 1373 (6th Cir. 1994). The Hartford plan reads: "We have full discretion and authority to determine eligibility for benefits and to construe and interpret all terms and provisions of the Group Insurance Policy." [AR 29].

In 2003, the Sixth Circuit held that an administrator had discretion to interpret the plan when the plan gave the administrator "complete control," the "power to construe," and the power to "determine all questions" arising under the plan. <u>Shields v. Reader's Digest Ass'n</u>, 331 F.3d 536, 541 n. 6 (6th Cir. 2003). The language of the Hartford plan clearly states that Hartford has full discretion to construe the plan. The Court therefore finds the arbitrary and capricious standard applies in this case as well.

"The arbitrary and capricious standard is the least demanding form of judicial review of administrative action." <u>Hunter v. Caliber Systems, Inc.</u>, 220 F.3d 702, 710 (6th Cir. 2000). A decision is not arbitrary and capricious when "it is possible to offer a reasoned explanation [for it], based on the evidence." <u>Killian v. Healthsource Provident Administrators, Inc.</u>, 152 F.3d 514, 520 (6th Cir. 1998). The review, however, "does not require us merely to rubber stamp the administrator's decision." <u>Jones v. Metro. Life Ins. Co.</u>, 385 F.3d 654, 661 (6th Cir. 2004). The administrator's decision should be upheld "if it is the result of a deliberate, principled reasoning process and if it is supported by substantial evidence." <u>Baker v. United Mine Workers of Am. Health and Ret. Funds</u>, 929 F.2d 1140, 1144 (6th Cir. 1991). The Court is required to review "the quality and quantity

8

of the medical evidence and the opinions on both sides of the issues." <u>McDonald v. Western-Southern Life Ins. Co.</u>, 347 F.3d 161, 172 (6th Cir. 2003).

Additionally, as discussed below, the Court must take into account a conflict of interest that exists when, as in this case, the plan administrator who decides whether a person receives benefits is the same party that pays those benefits.  The Court must also consider Hartford's failure to consider the Social Security Administration's decision to award benefits on the basis that McBriarty was totally disabled.

### B.  Conflict of Interest

Under the plan in this case, Hartford decides whether a plan participant receives benefits and if so, it must pay those benefits.  There is an "actual, readily apparent conflict" when the plan administrator is the same party that pays the benefits.  <u>Killian v. Healthsource Provident Adm'rs, Inc.</u>, 152 F.3d 514, 521 (6th Cir. 1998).  Such a conflict should be considered when determining whether the administrator's decision was proper.  <u>Firestone Tire & Rubber v. Bruch</u>, 489 U.S. 101, 115 (1989); <u>Glenn v. Metlife</u>, 461 F.3d 660, 666 (6th Cir. 2006), *cert. granted*, 128 S.Ct. 1117 (U.S. Jan. 18, 2008).

### C.  Social Security Disability Determination

McBriarty submits that Hartford acted arbitrarily because, in making the decision to terminate her benefits, Hartford gave no consideration or weight to the Social Security Administration's determination.  McBriarty therefore submits that it is inconsistent for Hartford to first encourage McBriarty to apply for benefits, to accept the financial gain of McBriarty's benefits, and then take the contradictory position that McBriarty is not disabled

9

and can perform sedentary work.  The Hartford readily admits that it did not consider the social security award and claims it did not do so because the Social Security record was not a part of the administrative record.

When considering a termination of benefits under an ERISA plan, a Social Security Administration decision that a person is disabled is relevant.  In Ladd v. ITT Corp., 148 F.3d 753, 755-56 (7th Cir. 1998), the Seventh Circuit reversed a denial of benefits where the administrator had encouraged and aided the plan participant in applying for and eventually securing Social Security disability benefits.  Judge Posner explained that while judicial estoppel did not apply, the inconsistent positions were a factor to consider when addressing the administrator's termination of benefits. Id. at 756.  The Sixth Circuit is in agreement with the Seventh on this matter.  The Sixth Circuit has held that while the Social Security determination is not the end of the inquiry, "a plan administrator's decision denying disability benefits where the Social Security Administration has determined that the applicant was totally disabled" can be deemed arbitrary and capricious.  Darland v. Fortis Benefits Insurance Co., 317 F.3d 516, 530 (6th Cir. 2003)(overruled on other grounds by Black & Decker Disability Plan v. Nord, 538 U.S. 822 (2003)).

In the case of Leffew v. Ford Motor Co., No. 07-1346, Dec. 14, 2007, 2007 WL 4443520 (6th Cir. 2007),  the administrative record did not include the Social Security disability award letter or any of the Social Security Administration records.  Although the plan provider had required the claimant to apply for Social Security, the provider did not consider the Social Security determination.  Id. at *7.  The plan provider argued that the

10

claimant could not prove the provider did not consider the Social Security award, however, even under these facts, the Sixth Circuit found that the failure to consider the Social Security decision was relevant to the issue of whether the denial of benefits was arbitrary.

Here, the record clearly shows that Hartford was aware of McBriarty's Social Security award. In fact, the plan requires a participant to apply for Social Security disability benefits upon an award of long-term disability. As soon as McBriarty's long-term disability claim was approved, Hartford told her she had to provide proof of her Social Security disability application. The record is replete with notations of instances where Hartford was inquiring as to the status of the Social Security claim. Immediately upon being notified of a favorable ruling, Hartford asked for, and received, a copy of the Notice of Award so as to determine the amount of set-off it was entitled to claim. While McBriarty may not have provided Hartford with a complete record of the Social Security decision, Hartford was well aware that the Social Security Administration concluded that McBriarty was disabled.

In Glenn v. Metlife, 461 F.3d 660, 669 (6th Cir. 2006), the Sixth Circuit held that a plan administrator who financially benefits from a government's determination that a participant is disabled should obviously give appropriate weight to that determination. While the failure to do so does not render the decision arbitrary per se, "it is obviously a significant factor to be considered upon review." Here, the concern is not that the Hartford gave inappropriate weight to the social security award but that it gave no consideration to the award at all. It chose to ignore a critical relevant fact that it very clearly knew existed. In the words of Judge Daugherty, "[t]his sequence casts additional doubt on the adequacy of

11

their evaluation of [McBriarty's] claim." Id. at 668.

### D. The Medical Evidence

In Hartford's denial of McBriarty's benefits, it relied primarily on Dr. Chou's checked-off form, where he agreed that McBriarty was capable of returning to work. While the form indicates that McBriarty is not disabled, Dr. Chou's deposition paints a different portrait of McBriarty's condition. Dr. Chou himself was unable to envision a scenario in which McBriarty could maintain a normal work routine – in addition to the numerous restrictions on her work ability, she would need numerous breaks and would likely have problems adhering to a standard work schedule.

The Sixth Circuit has rejected the practice of crediting opinions given on check-off forms that a person is capable of working when a physician's other reports and statement are clear that the person is incapable of working. See, e.g., Glenn, 461 F.3d at 671-72 ("the only fair inference from the record would actually undercut [the doctor]'s check-offs and his brief assessment on the functional capacity form . . . because that information was in direct conflict both with his earlier assessments and with every detailed written explanation that [the doctor] gave concerning [the participant]'s disability"); Spangler v. Lockheed Martin Energy Systems, Inc., 313 F.3d 356, 362 (6th Cir. 2002)(a check-off form and a "somewhat aberrant" physical capabilities evaluation do not justify a denial of benefits when "all of [the physician]'s prior reports and statements clearly indicate that [the participant] is not able to perform any work").

It has previously been noted that the Hartford found Dr. Chou's opinions somewhat

vague and inconsistent given his deposition statement.  Yet, the Hartford and Dr. Marion relied on that vague and inconsistent opinion.  Further troubling is the fact that there is no indication that the Hartford told either Dr. Chou or Dr. Marion that McBriarty had been declared disabled by the Social Security Administration. When Hartford sent Dr. Chou the check off form, Hartford told him about everything that contradicted her limitations, but did not tell him McBriarty had been declared disabled by the Social Security Administration. [AR 335].

As to Dr. Marion, "[w]hether a doctor has physically examined the claimant is indeed one factor we may consider in determining whether a plan administrator acted arbitrarily and capriciously in giving greater weight to the opinion of its consulting physician. Kalish v. Liberty Mutual/Libert Life Assur. Co. of Boston, 419 F.3d 501, 508 (6th Cir. 2005).  The use of a file review alone does not render the denial of McBriarty's benefits arbitrary, but is one more factor that indicates that Hartford's termination may not have been the result of a "deliberate, principled reasoning process."  See Baker v. United Mine Workers of Am. Health and Ret. Funds, 929 F.2d 1140, 1144 (6th Cir. 1991).

The Court is required to review "the quality and quantity of the medical evidence and the opinions on both sides of the issues." McDonald v. Western-Southern Life Ins. Co., 347 F.3d 161, 172 (6th Cir. 2003).  Dr. Gleis' independent medical examination supports Hartford's decision.  However, his opinion has not changed since March, 2003.  The Hartford continued to pay McBriarty benefits for nearly two and one-half years despite Dr. Gleis' opinion.  Presumably, it did so based on medical opinions which it found to be sound.  In

August of 2006, it chose not to consider those opinions when it decided to terminate her benefits. Instead, the Hartford relied on the opinion of Dr. Chou despite the fact that Dr. Chou's deposition testimony demonstrates that he does not feel strongly that McBriarty is capable of work.

The opinion of Dr. Marion was based almost entirely upon a message from Dr. Chou's nurse that Dr. Chou believed McBriarty was capable of work, and therefore is not of high quality. Additionally, the record does not reveal that Dr. Marion, like the other physicians involved, knew of the Social Security determination that McBriarty was disabled

The rejection of the earlier medical opinions in favor of a check-off form completed by Dr. Chou; the acceptance of Dr. Marion's file-only review which is based partly on Dr. Chou's "vague and inconsistent" opinion; the failure of the Hartford to consider the social security award in any respect; and the inherent conflict of interest the Hartford has in making determinations on benefits, leads the Court to conclude that the Hartford's decision to terminate McBriarty's benefits was not a part of a principled and deliberate reasoning process. Instead, it appears that Hartford considered only the evidence that would support the conclusion that McBriarty was capable of working, and failed to consider evidence supporting a conclusion that McBriarty was disabled. A plan provider cannot cherry-pick evidence from the record to support its conclusion that a denial is warranted. See Spangler v. Lockheed Martin Energy Systems, Inc., 313 F.3d 356, 359-362 (6th Cir. 2002).

## III. Conclusion

While the Court is mindful that the arbitrary and capricious standard is not an exacting

14

form of review, the Court cannot rubber-stamp the decision of Hartford when it failed to provide a full and fair review of the facts of this case.  See <u>Jones v. Metro. Life Ins. Co.</u>, 385 F.3d 654, 661 (6th Cir. 2004).  For all the foregoing reasons, the long-term disability benefits are hereby reinstated, retroactive to the date upon which they were terminated.  Any future determination on benefits shall provide for a full and fair review consistent with this opinion. Plaintiff's Motion for Judgment on the Record is hereby GRANTED [DN12].  The Plaintiff's bad faith claims and claims for punitive damages were dismissed by an August 30, 2007, Agreed Order of Dismissal [DN 20].  If the Plaintiff wishes to renew her claims for prejudgment interest and attorney fees, such claims must be filed by separate motion within 30 days of the entry of this order.

cc: counsel of record